■ ALISON M. CONLON, Respondent, v MILTON S. TEICHER, Appellant, et al., Defendants. [779 NYS2d 574]—

In an action, inter alia, to recover damages for tortious interference with a contract, the defendant Milton S. Teicher, as executor of the estate of Edward Padula, appeals from an order of the Supreme Court, Suffolk County (Baisley, J.), dated October 16, 2003, which denied his motion for summary judgment dismissing the complaint insofar as asserted against him and granted the plaintiff's cross motion for leave to amend her complaint, among other things, in effect, to add new defendants and to assert additional causes of action against the new defendants.

Ordered that the appeal from so much of the order as granted that branch of the plaintiff's cross motion which was, in effect, to add new defendants and to assert additional causes of action against the new defendants is dismissed, as the defendant Milton S. Teicher is not aggrieved by that portion of the order; and it is further,

Ordered that the order is modified, on the law, by deleting the provision thereof denying the defendant's motion for summary judgment dismissing the complaint insofar as asserted against him and substituting therefor a provision granting the motion; as so modified, the order is affirmed insofar as appealed from, and the action against the remaining defendants is severed; and it is further,

Ordered that one bill of costs is awarded to the appellant.

The appellant, Milton S. Teicher, who is the executor of the estate of Edward Padula, enlisted the services of three real estate brokers to sell estate property (hereinafter the Padula house). The brokers, Allan M. Schneider Associates, Inc. (hereinafter AMS), Sotheby's International Realty (hereinafter Sotheby's), and Prudential Long Island Realty (hereinafter Prudential) entered into an agreement with the appellant under which they obtained the exclusive right to list the subject prop-

erty in exchange for a 5% commission that would be split among them, with the procuring broker receiving 80% thereof and the other two brokers receiving 10% each.

The plaintiff, a real estate salesperson, had a contract with her employer, AMS, that provided that in the event the plaintiff found a purchaser for the Padula house, she was to receive 60% of the AMS share of the commission, calculated after the AMS share was reduced by 25%. By letter dated March 24, 2003, the three brokers who were party to the brokerage agreement confirmed that Sotheby's was the "sole procuring-selling broker" entitled to 80% of the commission ($120,000), and AMS and Prudential were entitled to $15,000 each.

The plaintiff alleged, inter alia, that the appellant knew of her contract with AMS and tortiously interfered with that contractual relationship by intentionally and maliciously entering into negotiations with the plaintiff's customers, Munro Bank and Avra Bank, directly and through another broker, with full knowledge of the efforts and labor the plaintiff had expended to procure the sale. She also alleged that the appellant's wrongful conduct tortiously interfered with prospective contractual relations. In addition, the plaintiff alleged that the appellant was unjustly enriched by having "knowingly and in bad faith" stood by and permitted a second salesperson from another firm to intervene at the last moment to complete the sale that the plaintiff had been instrumental in arranging, "thereby obligating the [appellant] to pay two commissions," which he never intended to do.

The plaintiff's claims concerning tortious interference are essentially claims for broker's commissions that the plaintiff, a real estate salesperson, is statutorily barred from bringing against any party other than a licensed real estate broker with whom she is associated (*see* Real Property Law §§ 442-a, 442-d; *see e.g. Colombo v Sharmas Realty*, 174 AD2d 985 [1991]; *Levinson v Genesse Assoc.*, 172 AD2d 400 [1991]). If AMS incorrectly agreed to have its share of the commissions fixed at 10%, then the plaintiff's remedy is to seek to recover damages from AMS.

The cause of action alleging unjust enrichment also must fall. The plaintiff cannot show that the appellant has been unjustly enriched at her expense (*see Waldman v Englishtown Sportswear*, 92 AD2d 833 [1983]), since the plaintiff is only entitled to a share of commissions directly from her employer, not from the appellant, whose contractual obligation to pay a 5% commission remained unchanged.

The parties' remaining contentions are without merit. H. Miller, J.P., Goldstein, Cozier and Mastro, JJ., concur.